USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/14/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SWEET TOOTH YONKERS LLC, et al.,

Plaintiffs,

-against-

25 Civ. 8433 (CM)

BTMI, LTD. and ELIZABETH BRENHOUSE,

Defendants.

**DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT AND DENYING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

McMahon, J.:

Plaintiffs in this lawsuit are a limited liability company organized under the laws of the State of New York ("Sweet Tooth") and three individuals of Palestinian descent. The LLC was organized "for the purpose of operating a food product business" at the Gateway Center in Yonkers, New York.[1] Two of those individual plaintiffs, Mohamed Flaifle and Moe Hanzick, are identified as "one of the business' founding members." They are not identified as members of the LLC, but for the moment I will assume that they are. The third plaintiff, Omar Jamal, is specifically identified as an attorney and is not alleged to have had any actual membership affiliation with Sweet Tooth LLC.

The complaint alleged that, in 2024, Plaintiffs began negotiations with Defendant Elizabeth Brenhouse for the purpose of leasing space in the Gateway Center, where they hoped to operate "a sweet and savory dessert and crepe shop called 'Sweet Tooth.'" (Complaint, ¶ 11).

[1] This lawsuit should have been filed in the court's White Plains Courthouse. The White Plains judges are busier than I am, so I am happy to keep and decide the lawsuit.

At some point after Attorney Jamal "joined the project" (whatever that means) and "organized a team to review the lease," Brenhouse allegedly added a clause to the draft lease prohibiting any "display of halal," which the complaint characterizes as "an overt attempt to marginalize the heritage of Plaintiff's investment team." (*Id.*, ¶ 13). In conversations, Brenhouse called halal "inhumane," said, "It's the way you guys do things that is the problem;" she also allegedly claimed to oppose "all meat," although she (or perhaps her company BTMI, Ltd.) had leased space to several other restaurants that serve meat. (*Id.*, ¶ 14). Brenhouse allegedly cut off discussions with Attorney Jamal and would speak only to Mr. Flaifle (*Id.*, ¶ 15). She terminated the lease negotiations at a point when Plaintiffs had already made many concrete preparations to open their business in the subject space. (*Id.*, ¶¶ 15-16). Plaintiffs' efforts to resuscitate their business relationship proved futile (*Id.*, ¶17).

So far, an ugly story.

But now come the procedural problems.

Plaintiffs alleged claims under federal, state, and New York City law. In their First Cause of Action, Plaitniffs asserted a claim for race and national origin discrimination "In Violation of *Title VII* of the Civil Rights Act of 1964 (42 U.S.C. § 2000 *et seq*.)" (emphasis added). But Title VII (found at 42 U.S.C. § 2000(e)) prohibits discrimination in the terms and conditions of employment. There was no effort by Plaintiffs to obtain employment with either Defendant; Defendants did not deny Plaintiffs employment or otherwise discriminate against them in the terms and conditions of any employment relationship. The assertion of a claim of employment discrimination was either a rookie mistake or a blatant effort to obtain federal jurisdiction in this lawsuit, because, on its face, a complaint alleging refusal to lease space fails to state a claim for employment discrimination.

The text of the First Cause of Action, however, did not limit itself to alleging violations of Title VII. It also mentioned Title VI. And while Paragraph 22 of the complaint mistakenly alleges that "*Title VII* prohibits a recipient of federal funds from intentionally treating any individual worse, even in part, because of his or her national origin, ethnicity and/or creed," it goes on to state that the Plaintiffs were the victims of discrimination under *Title VI,* which does in fact prohibit discrimination on the basis of national origin, ethnicity, or religion in the conduct of any federally funded program. *See* 42 U.S.C. § 2000(d) (not (e)). Unfortunately, the complaint contains no allegation of fact tending to show that either BTMI, Ltd. or Elizbeth Brenhouse was the recipient of any federal funding or was conducting any federally funded program in which Plaintiffs were trying to participate. The complaint only alleges that one or both of the Defendants (which one is not identified) was/were private landlord(s) of space location at the Gateway Mall and refused to lease that space to Plaintiffs.

As noted above, the remaining claims for relief are asserted under State and New York City law. This Court has jurisdiction over them only supplementally to a federal claim. *See* 28 U.S.C. § 1367.

In an answer filed in December 2025, Defendants admitted being engaged in lease negotiations in 2024 with Plaintiffs, for a sweet (but not savory) dessert and crepe shop to be called "Sweet Tooth," but denied that the space under discussion was located in the Gateway Shopping Center (Answer, ¶ 6). The Answer also asserted as an affirmative defense that Title VII "is inapplicable to the present case and no other federal questions are presented in this case." (Answer, ¶ 7). There is no mention of Title VI in the Answer, despite the fact that it is referenced in the text (if not the header) of the First Cause of Action.

After filing their answer, Defendants moved to dismiss the complaint for lack of federal jurisdiction pursuant to Fed. R. Civ P. 12 (b)(1). But just as Plaintiffs invoked an irrelevant statute, Defendants made the wrong motion. A federal district court has subject matter jurisdiction over claims for relief asserted under both Title VII and Title VI[2] and the complaint in this action asserts such claims. I thus have subject matter jurisdiction to adjudicate those claims. Whether the claims as asserted are legally sufficient is another matter entirely – they are not. But that does not divest this Court of jurisdiction – it just means the claims will have to be dismissed because the Plaintiffs will be unable to prove a key element of their claim on the merits.

What Defendants should have done was move (1) for judgment on the pleadings (since they filed an answer) pursuant to Fed. R. Civ. P. 12(c), seeking to dismiss the complaint on the ground that the it failed to plead a viable claim under either Title VII or Title VI of the Civil Rights Act of 1964; and then (2) to dismiss the state and City law claims without prejudice by declining to exercise supplemental jurisdiction. The asserted basis for failure to state a claim under Title VII is that the case fails to allege any act of discrimination in the terms and conditions of Plaintiffs' employment; the basis for failure to state a claim under Title VI is that the complaint fails to allege that the Plaintiffs are the recipients of federal funds or are conducting a federally funded program, which would subject them to suit under Title VI. That motion would have been granted – albeit with leave to amend the complaint as to Title VI (see *infra.)*. But it has been overtaken by events.

The inadequacy of the First Cause of Action insofar as it is asserted under Title VII is inarguable, no matter the basis for the motion to dismiss. But the probable reason why Defendants styled this as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is that, when

---

[2] Pursuant to Title VI, the implied private right of action extends only to disparate treatment, not disparate impact claims, but since Plaintiffs allege a disparate treatment claim, this is not a problem.

deciding such a motion, the Court is free to consider evidence beyond what is alleged in the four corners of the complaint. *Anglo-Iberia Underwriting Mgmt. Co., v. P.T. Jamsostek*, 600 F. 3d 171, 175 (2d Cir. 2010). To the extent that the original complaint depends for its force on Title VI, it failed to assert affirmatively that the Defendants, or either of them, were in fact recipients of federal funding for the business operations in which Plaintiffs sought to participate. And Ms. Brenhouse submitted an affidavit indicating that neither she nor BTMI, Ltd. is the recipient of any federal funding.[3]

Plaintiffs originally argued that the Court could not consider this affidavit on a motion to dismiss. They were, of course, correct if the motion had been a motion to dismiss (or for judgment on the pleadings) for failure to state a claim on which relief may be granted. They were not correct if the motion were properly a motion addressed to the jurisdiction of the Court.

Had this motion more properly been brought as a motion under Rule 12(b)(6) or Rule 12(c), the Court would have overlooked the obvious pleading deficiency (failure to allege affirmatively that the Defendants received federal funds), immediately converted the motion to one for summary judgment, and given Defendants sixty days to provide the Court with proof that the Defendants (or either of them) were carrying out some federally funded program in connection with their leasing of the space they had proposed to occupy. And if it really were a motion to dismiss for want of subject matter jurisdiction, I would have ordered jurisdictional discovery and given Defendants the same sixty days to provide the Court with evidence that Defendants were the recipients of federal funding. Defendants are absolutely correct that, in this Circuit, it is the regular practice to provide a plaintiff confronted with a motion to dismiss for

---

[3] Had the Answer that Defendants filed recognized the mention of Title VI and raised as an affirmative defense the fact that the Defendants were not alleged to be, and were in fact not, the recipients of any federal funding, we would be in yet another procedural posture.

want of federal jurisdiction with limited discovery on the issue that resolves the jurisdictional question – in this case, the receipt of federal funding.

But I will take the motion as I find it, and I deny Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1) (Dkt. No. 12). This Court plainly has subject matter jurisdiction over claims asserted under federal law, and the complaint asserts claims under federal law. Whether those claims are legally cognizable is, as I have said, another matter entirely.

Plaintiffs do, however, recognize that they have made a mistake in pleading a cause of action under Title VII, and they have responded to Defendants' motion by seeking leave to file an amended complaint – one that both clarifies that they rely only on Title VI, not on Title VII, and that adds two new claims for relief under 42 U.S.C. §§ 1981 and 1982. Defendants oppose the motion for leave to amend on the ground that it would be futile.[4]

I first note that Plaintiffs may not rely on Fed. R. Civ. P. 15(a)(1)(B) to file an amended complaint as of right. Defendants' answer was filed on December 10, 2025 (Dkt. No. 9); the motion to dismiss pursuant to Rule 12(b) was filed on January 28, 2026 (Dkt. No. 12); and the proposed amended complaint (appended to a motion) was not filed until March 23, 2026 (Dkt. No. 19, see particularly Dkt. No. 19-2). This means that amendment can be allowed only by leave of court. But because leave to amend is to be freely granted – particularly at this very early stage of litigation – the only basis for denying such a motion would be if amendment would be futile because the proposed amended claims fail to state a claim on which relief can be granted. Unfortunately for Defendants, they do state such a claim, so amendment would not be futile.

---

[4] They also claim undue delay, but the argument is so obviously specious that it is simply not worth any response.

The proposed amended complaint (found at Dkt. No. 19-2) asserts a First Cause of Action under Title VI of the Civil Rights Act. All references to Title VII have disappeared.[5] If the Defendants are not the recipients of federal funding in connection with the business venture that would have involved Plaintiffs (the leasing of space, wherever that space might be located, in Yonkers, New York[6]) then this claim will have to be dismissed (on a motion for summary judgment), since only a recipient of federal funds can be sued under Title VI. *Bloomberg v. N.Y.C. Dept of Education*, 410 F. Supp. 3d 608, 625-26 (S.D.N.Y. 2019). But Plaintiffs are entitled to discovery on that issue. I acknowledge that most commercial landlords are not running federally funded programs. And the amended complaint itself is weak, since Plaintiffs allege the receipt of federal funding solely "on information and belief," without including any facts about the sources of Plaintiffs' "information and belief." But Defendants may take discovery on that issue before I will dismiss the newly amended First Cause of Action with prejudice. Defendants may move for summary judgment at any time they feel ready to prevail on this issue. Moreover, I will be prepared to entertain a motion for sanctions pursuant to Fed. R Civ. P. 11 if it turns out that Plaintiffs and their counsel had no factual basis to assert "on information and belief" that Defendants were in fact the recipients of federal funds. Counsel in particular are warned that I will not hesitate to impose sanctions if it turns out that this was simply a frolic and detour.

The newly added claims in the proposed Amended Complaint (Second and Third Causes of Action) allege discrimination in the making of contracts generally in violation of 42 U.S.C. §

[5] Well apparently one remains, in the opening paragraphs of the Amended Complaint, but counsel's carelessness did not extend to the actual pleading of the First Cause of Action.

[6] Defendants plead in their answer that the space in question is not located in the Yonkers Gateway Center (or, as most people call it, the Gateway Mall). Since I do not know who or what BTMI is I really don't know, but it is possible that whether the proposed premises is located at the Gateway Center may have some bearing on the federal funding question. That remains to be seen.

1981, and discrimination in the making of a contract for the lease of property in violation of 42 U.S.C. § 1982. Defendants contend that amendment to assert these claims would be futile, because Sections 1981 and 1982 only prohibit discrimination on the basis of race – not religion – and the gravamen of the newly asserted claims is that Plaintiffs were denied a lease from Defendants because they were practicing Muslims who wanted to advertise that their wares were "halal."

If religion were all that were pleaded, I would have to agree with Defendants. It is indeed the case that Sections 1981 and 1982 do not prohibit the making of contracts, including specifically leases, on the basis of religion. These statutes bar only discrimination on the basis of race (interpreted to include ethnicity/national origin). *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F. 3d 1085, 1087 (2d Cir. 1993).

However, Plaintiffs plead that they are Palestinian Arabs, not just that they are Muslims. And they allege that Defendants discriminated against them on that basis. Discrimination in the making of contracts (including leases) is indeed prohibited under Sections 1981 and 1982 if the reason why the contract was denied is the race of the contracting party. And no less an authority than the United States Supreme Court has held that Arabs constitue a distinct racial minority protected by Sections 1981 and 1982 with respect to the making of contracts. *Shaara Tefila Congregation v. Cobb*, 481 U.S. 615, 617-18 (1987) ("It is evident from the legislative history of the section…that…Jews and Arabs were among the peoples then considered to be distinct races and hence within the protection of the statute."). The allegation that Plaintiffs are Palestinian Arabs is sufficient to implicate their racial/ethnic identity, regardless of whether or not they practice Islam. At the pleading stage I cannot say that such a claim is incapable of proof. Therefore, I must conclude that amendment would not be futile and allow it.

Of course, if it turns out that the reason Plaintiffs were denied a lease is that Defendant Brenhouse had some sort of objection to the methods used to butcher halal meats (see Amended Complaint, Dkt. No. 19-2 at ¶ 14) – or even that she objected to the fact that Plaintiffs are Muslim (abhorrent though that would be) – then the causes of action based on Sections 1981 and 1982 will have to be dismissed. That is because Sections 1981 and 1982 do not prohibit discrimination on the basis of either religion or butchering practices.

Or it may turn out that the Defendants did not know that Plaintiffs were Palestinian Arabs. In that case, their claim may end up being dismissed because a defendant must know about the national origin/ethnicity of a Plaintiff in order to discriminate on that basis. *See Woodman v. WWOR-TV, Inc.*, 293 F. Supp. 2d 381, 386 (S.D.N.Y. 2003), *aff'd*, 411 F.3d 69 (2d Cir. 2005).

But it may turn out that Plaintiffs' ethnicity was known to Brenhouse and did play into the decision not to grant them a lease. They are entitled to try to make their case.

At the present time the Court will exercise supplemental jurisdiction over the corresponding state and City claims (though I am confused about how the New York City Human Rights Law might apply to a lease in Yonkers, which is most definitely not located in New York City). Whether I will continue to entertain those claims if all federal claims are dismissed after discovery is a matter for another day.

The motion to dismiss (Dkt. No. 12) is DENIED. The cross motion for leave to file an amended complaint (Dkt. No. 18) is GRANTED. The Defendants must file an answer with respect to the amended complaint (Dkt. No. 19-2) by July 31, 2026. As I have already ruled that amendment would not be futile, a motion to dismiss would not be appropriate. No extension of this deadline will be granted.

The parties have until November 20, 2026 to complete ALL discovery. Rule 26 discovery, which per order of the Court consists of the production of ALL documents and communications that were generated during the lease negotiations, all drafts of the proposed lease, and the names of all witnesses who may (not will, may) be called to testify at the trial of this action, must be turned over by August 14, 2026. Plaintiffs must serve any requests for production or interrogatories addressed to the Defendants' receipt of federal funding for the business operations of BTMI, Ltd. or Elizabeth Benhouse in her capacity as principal of BTMI, Ltd. no later than August 7, 2026. Defendants must respond no later than August 21, 2026. Any deposition relating to this issue must be completed by September 11, 2026.

This constitutes the decision and order of the Court. It is a written decision. The Clerk will remove the motions at Dockets Nos. 12 and 18 from the Court's list of open motions.

Dated: July 14, 2026

U.S.D.J.

BY ECF TO ALL COUNSEL